United States District Court
Southern District of Texas
**ENTERED**
December 06, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:12-cr-696-1 |
| | § | |
| ERNESTO RICO-ELIZONDO | § | |

## ORDER

Before the Court is Defendant's sentence reduction motion filed pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. No. 250). The Court has carefully considered the motion, the record, and applicable legal authorities. The Court hereby **GRANTS** Defendant's motion (Dkt. No. 250), for the reasons set out below. An amended judgment will issue reducing Defendant's sentence to a term of imprisonment of 176 months, to be followed by five years of supervised release.

### I.   BACKGROUND

On June 25, 2013, the Court sentenced Defendant to 240 months' imprisonment on his conviction under 21 U.S.C. § 841(b)(1) for possession of methamphetamine with intent to distribute (Min. Ent. June 25, 2013; Dkt. No. 162 at 2). At sentencing, Defendant was held accountable for 10.58 kilograms of methamphetamine (actual) (Dkt. Nos. 131 at 1; 163 at 1). A 240-month sentence was the then-controlling mandatory minimum sentence, because Defendant had a prior conviction for possession of marijuana—a felony drug offense (Dkt. Nos. 103 at 11; 163 at 1). *See* 21 U.S.C. § 841(b)(1), *amended by* First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220 (2018).

1

Defendant's appeal of his sentence and subsequent habeas petition were dismissed (Dkt. Nos. 193, 219, 220). The Court additionally denied Defendant's numerous requests for a sentence reduction pursuant to the First Step Act (Dkt. Nos. 206, 208, 211, 230, 242). However, those denials occurred prior to a recent amendment to the United States Sentencing Guidelines Manual, under which Defendant now moves anew for a sentence reduction (Dkt. No. 250).

## II.    LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a criminal defendant's sentence on the defendant's motion—after finding that the defendant exhausted his administrative remedies and after considering the factors set forth in 18 U.S.C. § 3553(a)—if the court concludes that: (1) extraordinary and compelling reasons warrant a reduction; and (2) the reduction is consistent with the United States Sentencing Commission's applicable policy statements. The applicable policy statement is found in United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13.

As relevant here, § 1B1.13(b)(6) provides for a sentence reduction based on extraordinary and compelling circumstances where: (i) the defendant has served at least 10 years of his sentence; (ii) a non-retroactive change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed"; and (iii) the defendant's individualized circumstances support a sentence reduction. *See United States v. Jean*, 108 F.4th 275, 289–90 (5th Cir. 2024).

## III. DISCUSSION

### A. Exhaustion of Remedies

Before considering the merits of Defendant's motion, the Court must determine whether Defendant exhausted his administrative remedies prior to filing his motion with the Court. Under 18 U.S.C. § 3582(c)(1)(A), the Court can modify a term of imprisonment:

> [U]pon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

*See United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) (alteration omitted). The exhaustion requirement is mandatory. *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020).

The Court is satisfied that Defendant exhausted his administrative remedies in this case. Defendant attached to his motion a compassionate release request he made to the Warden of his facility on July 19, 2023 (Dkt. No. 250-1). Defendant filed a second request for compassionate release or a reduction in his sentence with the Warden on November 9, 2023 (Dkt. No. 250-2 at 2). The Warden subsequently wrote Defendant a letter on December 5, 2023, stating that he would not pursue Defendant's request for compassionate release (Dkt. No. 250-2 at 3). Defendant's administrative appeal of the Warden's decision to the regional office was rejected (Dkt. No. 250-3 at 2).

If Defendant was dissatisfied with the regional office's decision, he could have appealed to the Bureau of Prison's General Counsel, which is the final

administrative appeal in the inmate grievance process. *See* FED. BUREAU OF PRISONS, OFF. OF GEN. COUNS., NO. 1330.18, ADMIN. REMEDY PROGRAM (2014), APPEALS § 542.15 ("Appeal to the General Counsel is the final administrative appeal."). However, Defendant's decision not to appeal to the General Counsel does not procedurally bar his motion because he was free to file his motion 30 days after making a request to the Warden for a sentence reduction—regardless of whether the Bureau of Prisons ruled on the request. *See Garrett*, 15 F.4th at 338. More than 30 days have passed since Defendant requested relief from the Warden, and Defendant thus exhausted his administrative remedies. The Court now turns to the merits of Defendant's motion.

### B. Merits of the Motion

Defendant has served more than ten years of his sentence, so he satisfies the first prong of § 1B1.13(b)(6) (*see* Min. Ent. June 25, 2013). *Jean*, 108 F.4th at 289–90. The next prong is whether Defendant has demonstrated that a change in law produced a gross disparity between the sentence Defendant is serving and the sentence likely to be imposed when his motion was filed. *See id.* at 290. The Court is satisfied that a gross disparity exists between the previously controlling statutory minimum and the sentence the Court would have imposed at the time Defendant filed his motion.

Defendant premises his motion on the First Step Act of 2018's effect on the mandatory minimum applicable to his sentence. He argues that due to the Act, his prior marijuana felony offense would no longer trigger a 20-year mandatory

4

minimum (Dkt. No. 250 at 13). At sentencing, the 20-year mandatory minimum applied because of Defendant's prior marijuana offense. *See* First Step Act, § 401.

Significantly, the First Step Act struck the term "felony drug offense" from 21 U.S.C. § 841(b)(1)(A)'s enhanced statutory minimum provision and substituted "serious drug felony" in its place. *See id.* A "serious drug felony" is defined as an offense for which (A) the defendant served a term of imprisonment of more than 12 months; and (B) the defendant's release from imprisonment was within 15 years of commencement of the instant offense. *See id.* The First Step Act also decreased the mandatory minimum for defendants with serious drug felony priors from 20 years to 15 years. *See id.* So, after the First Step Act, an unenhanced 10-year statutory minimum applies under § 841 to defendants without serious drug felony priors, and an enhanced 15-year minimum applies to defendants with serious drug felony priors instead of the old 20-year minimum. *See* 21 U.S.C. § 841(b)(1)(A).

Defendant only served six months' imprisonment on his prior felony marijuana offense, so he is correct that it would no longer qualify as a "serious drug felony" after passage of the First Step Act (Dkt. No. 103 at 11). *See* First Step Act § 401. Therefore, a 10-year mandatory minimum would now apply in Defendant's case, rather than the 20-year minimum the Court applied in 2013. *See* 21 U.S.C. § 841(b)(1)(A).

However, although the 20-year mandatory minimum no longer controls, the same sentencing guidelines range still applies to Defendant. Irrespective of any mandatory minimum, at the time Defendant was sentenced, his sentencing

guidelines range was 210–62 months, based on a total offense level of 35 and a criminal history category III (*see* Dkt. No. 163 at 1). *See* U.S.S.G. Ch. 5, Pt. A.

Defendant argues that his sentencing range would now be lower due to Amendment 782 to the United States Sentencing Guidelines, which increased the threshold drug quantities that trigger the base offense levels in U.S.S.G. § 2D1.1(c)'s drug table (Dkt. No. 250 at 6). *See* U.S.S.G., SUPPLEMENT TO APP. C amend. 782, at 59–69. But this argument fails to get off the ground: the 10.58 kilograms of methamphetamine (actual) that defendant was held responsible for still triggers base offense level 38, the highest base offense level in § 2D1.1. *See* U.S.S.G. § 2D1.1(c)(1) (triggered by 4.5 kilograms or more of methamphetamine (actual)). Defendant's contention that he is eligible for a lower sentencing range based on Amendment 821 to the Guidelines is also without merit, and the Court has separately denied his request for Amendment 821 relief (*see* Dkt. Nos. 250 at 15; 251).

Therefore, the same sentencing range would apply today as applied at sentencing. This is relevant because in considering a sentence reduction motion, U.S.S.G. § 1B1.13(b)(6) directs the court to weigh the disparity between the defendant's original sentence and the "sentence likely to be imposed at the time the motion is filed." That difference must constitute a "gross disparity." *Id.*; *see also Jean*, 108 F.4th at 290. Although courts are not bound by the United States Sentencing Guidelines, they "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005).

Therefore, Defendant is not automatically entitled to a sentence at the new 10-year mandatory minimum. Rather, the Court must consider what sentence, including any applicable variances, it would have imposed if the former 20-year mandatory minimum did not apply. This analysis turns on Defendant's sentencing range, the facts of the case, and the other factors the Court considers when imposing a sentence. *See* 18 U.S.C. § 3553(a).

The Court must inquire, then, whether it would have applied a variance in Defendant's case had a 20-year mandatory minimum not controlled. It is compelling to note that the Court granted downward variances to all of Defendant's co-defendants (*see* Dkt. Nos. 152 at 2; 153 at 1, 3 (68-month variance); 154 at 2; 155 at 1, 3 (90-month variance); 165 at 1, 3 (27-month variance)). The Court is therefore persuaded that it would have also granted Defendant a variance if the 20-year mandatory minimum had not applied. The question is what magnitude the variance should be, a determination that primarily turns on the relative culpabilities of the defendants in this case.

Notably, while co-defendant Ely David Aleman-Pecina received a 3-level enhancement for serving as a manager and supervisor in the offense, Defendant received no such enhancement (*see* Dkt. Nos. 96 at 10; 103 at 10). Acting on behalf of unknown individuals in Mexico, Aleman-Pecina directed Defendant to recruit a truck driver to transport the narcotics in this case (Dkt. No. 96 at 10). He instructed Defendant to retrieve $1,000 cash from an unidentified individual to pay the driver, coordinated the delivery of the narcotics to the driver, and told the driver to meet

him for delivery after transport (Dkt. No. 96 at 10–11). He also recruited another co-defendant to transport narcotics (Dkt. No. 96 at 7). Aleman-Pecina's actions were thus more culpable than Defendant's conduct; nevertheless, the Court granted him a 27-month downward variance from his 135–68 month sentencing range and sentenced him to 108 months (Dkt. No. 165 at 1, 3).

Conversely, Defendant is clearly more culpable than his other co-defendants, who acted as drivers to transport the drugs at issue (Dkt. No. 103 at 5–6). The Court granted the driver co-defendants 68- and 90-month downward variances, sentencing them both to 120-month mandatory minimum sentences (Dkt. Nos. 152 at 2; 153 at 1, 3; 154 at 2; 155 at 1, 3). Although Defendant did not receive an aggravating role enhancement, he recruited a truck driver and was more involved in planning the offense than the driver co-defendants (*see* Dkt. No. 103 at 5–6, 10). The seriousness of Defendant's conduct therefore fell somewhere between that of Aleman-Pecina and the driver co-defendants. The Court thus finds that it would have granted Defendant a 34-month downward variance if the 20-year mandatory minimum had not applied. This figure falls between Aleman-Pecina's 27-month downward variance and the larger downward variances the driver co-defendants received, and appropriately balances the factors laid out in 18 U.S.C. § 3553(a).

That means the sentencing disparity triggered by the First Step Act is 64 months—the difference between the 240-month sentence the Court imposed and the 176-month sentence it would have imposed if the 20-year mandatory minimum had not applied. The Court is satisfied that a 64-month difference constitutes a gross

8

disparity. *See, e.g., United States v. Howard*, No. CR ELH-13-0629, 2024 WL 112010, at *17 (D. Md. Jan. 10, 2024) ("In my view, under the circumstances of this case, a 21-month disparity is a 'gross disparity.'"); *United States v. Benjamin*, No. CR RDB-14-0048, 2024 WL 4803412, at *7 (D. Md. Nov. 15, 2024) (considering 48 months to constitute a gross disparity). Over five years is a significant measure in a person's life, and spending that time incarcerated instead of free "surely feels like an eternity for [the defendant]." *United States v. Monk*, No. 10-CR-00197 (ER), 2024 WL 3936351, at *5 (S.D.N.Y. Aug. 26, 2024) (alteration in original) (quoting *United States v. Robinson*, No. CR 01-103-01-JJM-LDA, 2024 WL 1557770, at *3 (D.R.I. Apr. 10, 2024)) (considering 5-year disparity). The 64-month difference between Defendant's 240-month mandatory minimum sentence and the sentence the Court would have imposed when his motion was filed constitutes a gross disparity worth remedying.

In addition, Defendant's individualized circumstances and the factors in 18 U.S.C. § 3553(a) support a sentence reduction. Specifically, the Court is compelled by the fact that co-defendant Aleman-Pecina received a sentence of 108 months and has already been discharged from the supervised release that followed his sentence (Dkt. Nos. 164 at 2; 245; Min. Ent. June 25, 2013). Both driver co-defendants in this case have also been released from incarceration; one of them has also been discharged from supervised release (Dkt. Nos. 103 at 5–6; 225; 248).

Further, the fact that Aleman-Pecina is a more culpable co-defendant and has already completed his supervised release term, while Defendant has many

9

years remaining on his sentence, is a compelling factor warranting a sentence reduction. *See United States v. Brown*, 706 F. Supp. 3d 516, 522 (D. Md. 2023) (citation omitted) ("The disparity between the sentence [defendant] is serving and that of a more culpable co-defendant is another factor that leads the Court to conclude that [defendant's] sentence is excessive.").

Additionally, although Defendant did not provide official documentation to the Court, he states in his motion that he has taken courses while incarcerated, has worked several institutional jobs, and that the Bureau of Prisons considers him to have a low risk of recidivism (Dkt. No. 250 at 11, 12). The Court agrees with the low risk of recidivism assessment, given that Defendant is now 46 years old (*see* Dkt. No. 103 at 3). A 2017 United States Sentencing Commission study found a significant inverse correlation between the age of offenders at release and the likelihood that they will recidivate. *See* U.S. SENT'G COMM'N, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017). The Commission found that, "[o]lder offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." *Id.* at 3. Additionally, upon release, Defendant has plans to work as a handyman while living at a relative's house (Dkt. No. 250-2 at 2). On balance, the Court finds that a 240-month sentence serves little additional deterrent effect in light of Defendant's age. *See* 18 U.S.C. § 3553(a). Thus, Defendant has sufficiently demonstrated that a sentence reduction is warranted. *See Jean*, 108 F.4th at 289–90.

Lastly, the First Step Act also affected the mandatory supervised release term applicable to Defendant. The statute of conviction, 21 U.S.C. § 841(b)(1)(A), provides: "[A]ny sentence under this subparagraph shall, in the absence of [a prior conviction for a serious drug felony or serious violent felony], impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment." As discussed, Defendant's marijuana felony prior does not qualify as a serious drug felony. *See* First Step Act of 2018, § 401. Therefore, a ten-year supervised release term is no longer required under the statute. The Court will accordingly reduce Defendant's supervised release term to five years.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's sentence reduction motion (Dkt. No. 250). An amended judgment will issue reducing Defendant's sentence to a term of imprisonment of 176 months, to be followed by five years of supervised release.

It is so **ORDERED**.

**SIGNED** December 6, 2024.

_____
Marina Garcia Marmolejo
United States District Judge